Filed 12/19/25  P. v. Schanuth CA3
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C100904 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF21-00211) |
| v. | OPINION ON TRANSFER |
| ARNOLD WAYNE SCHANUTH, | |
| Defendant and Appellant. | |

Defendant Arnold Wayne Schanuth appeals following his resentencing for assault with a deadly weapon with a great bodily injury enhancement.  In 2023, this court issued its opinion in defendant's first appeal.  (*People v. Schanuth* (Jan. 23, 2023, C095754) [nonpub. opn.] (*Schanuth I*).)  This court affirmed the convictions but vacated his sentence and remanded the matter for a full resentencing in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567), which amended the methodology for

1

selecting an appropriate sentencing triad term.  (Pen. Code, § 1170,[1] subd. (b); Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.)

On remand, the trial court in 2024 sentenced defendant to 11 years, including the upper term on the principal count.  In an unpublished opinion, we affirmed the judgment. (*People v. Schanuth* (Jan. 28, 2025, C100904) [nonpub. opn.].)

The California Supreme Court subsequently granted review and transferred the matter back to us with directions to vacate our opinion and reconsider in light of *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*).  By separate order, we vacated our decision.

In supplemental briefing after transfer, defendant argues the trial court erred in imposing the upper term on the principal count based on aggravating circumstances that (1) he had neither admitted nor stipulated to, and (2) a jury had not found true beyond a reasonable doubt.  The People agree.  We will vacate the sentence and remand the matter for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2021, defendant pleaded no contest to assault with a deadly weapon. (§ 245, subd. (a)(1).)  He also admitted a great bodily injury enhancement (§ 12022.7, subd. (a)) and a prior strike (§§ 667, subds. (b)-(i), 1170.12).  Defendant further admitted that he was on postrelease community supervision (PRCS) at the time of the crime and had violated the terms of that supervision.  As part of the plea, defendant entered into a *Cruz*[2] waiver.  The parties agreed that, if defendant successfully complied with the *Cruz* waiver for one year, the trial court would dismiss his prior strike allegation, and the trial court would order probation.  If not, the trial court would impose a prison sentence of up to 11 years.

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     *People v. Cruz* (1988) 44 Cal.3d 1247.

In November 2021, the trial court found defendant had violated the *Cruz* waiver by committing assault (§ 240) and battery (§ 243, subd. (e)(1)). (*Schanuth I, supra,* C095754.) The following month, the trial court denied defendant's *Romero*[3] motion and sentenced him to prison for an aggregate term of 11 years, as follows: The upper term of four years for the assault with a deadly weapon count, doubled to eight years due to the prior strike, plus three years consecutive for the great bodily injury enhancement. As noted *ante*, in January 2023, this court vacated the sentence and remanded the matter for resentencing under current applicable law. (*Schanuth I,* C095754.)

In April 2024, defendant filed a brief asking the trial court to impose the low or middle term and dismiss the prior strike and the great bodily injury enhancement pursuant to section 1385. As to the prior strike and the great bodily injury enhancement, defendant argued it should be dismissed because he suffered childhood trauma, and the current offense was connected to mental illness. (§ 1385, subds. (c)(2)(D), (c)(2)(E).) Defendant argued that he was repeatedly molested by a relative when he was younger than 10 years old. That relative later committed suicide. In addition, his parents, who separated when he was an infant, regularly engaged in domestic violence with each other. Defendant's father was an alcoholic and physically abused defendant. This childhood trauma led defendant to abuse methamphetamine and alcohol, but he had attended substance abuse programs while in prison and had now been sober for two and a half years. He further argued that, as a result of his childhood trauma, he suffered from "Post Traumatic Stress Disorder (PTSD), impulsiveness, aggressiveness, a tendency to act out, anxiety, and bipolar disorder." He claimed he also had been told that he had an intellectual disability. In addition, the assault with a deadly weapon charge alone was not

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

a violent felony. (§ 1385, subd. (c)(2)(F).) And, his prior strike was based on a 2016 conviction for first degree burglary and was therefore stale. (§ 1385, subd. (c)(2)(H).)

Defendant argued that either a low or middle term was appropriate because there were no aggravating facts or circumstances stipulated to or admitted by defendant during his plea, nor were any aggravating facts or circumstances found true beyond a reasonable doubt by a jury. Defendant also pointed out the trauma he experienced during childhood. And, he had made positive use of his time in prison, including getting his high school diploma and taking college classes. He also had participated in multiple self-help classes and programs, including self-improvement, victim impact, substance abuse, anger management, first aid, offender corrections, and domestic violence. In addition, defendant engaged in vocational training as a porter, forklift operator, skilled warehouse worker, and day laborer, and his supervisors' reviews were positive. He had been accepted into a drug and alcohol treatment program upon his release. Defendant also submitted a classification from the Department of Corrections and Rehabilitation (CDCR) that opined defendant "does not pose a threat to the safety of Public, Staff and Inmates" if he was housed in a minimum support facility or community program.

During the April 2024 sentencing hearing, the trial court stated it had reviewed defendant's sentencing brief. The prosecutor asked the trial court to impose the same sentence. The prosecutor reminded the court that defendant was on mandatory supervision at the time of the current offense. In addition, he submitted a certified record of conviction (certified rap sheet) that he argued showed defendant's prior convictions were both significant and of increasing seriousness. Defendant's criminal history included what the trial court described as "assaultive behavior starting back as a juvenile" plus: (1) a 2006 conviction under former Health and Safety Code section 11377 (which the court noted was no longer a felony); (2) a 2009 conviction for reckless evasion and driving under the influence (Veh. Code, §§ 2800.2, 23152, subd. (a)); (3) a 2016 conviction for first degree burglary (§ 459), vehicle theft (Veh. Code, § 10851), and

4

driving under the influence (Veh. Code, § 23153); (4) fifteen violations of supervision through 2017; (5) a 2017 conviction for assault (§ 245, subd. (a)(4)); (6) a 2019 conviction for reckless evasion (Veh. Code, § 2800.2, subd. (a)); and (7) four prior prison terms.

Defendant again asked the trial court to impose the lower term and strike his prior strike. He argued that the circumstances for the *Cruz* waiver violation were "pretty close." And, although defendant had an extensive criminal history, "most" of his crimes were related to substance abuse, including possession of a controlled substance, driving under the influence, and petty theft. Defendant further argued his childhood trauma led to his substance abuse issues.

Turning first to defendant's *Romero* motion, the trial court said it was "good" to see defendant's "progress" during his incarceration. Still, the current crime was a "random attack" on the victim and therefore "very concerning." In addition, defendant had "a consistent pattern of criminality," including four prior prison terms and multiple PRCS violations. Under the circumstances, the trial court declined to strike the prior strike. Turning next to the enhancement and the term, the court disagreed with CDCR's opinion that defendant did not pose a safety threat, saying it was "too soon to tell" whether defendant was not a danger to society. In light of defendant's criminal history (including prior prison terms and numerous prior convictions as an adult), the fact that defendant was on PRCS when he committed the current crime, and that defendant admitted the great bodily injury enhancement, the trial court imposed the same 11-year aggregate prison sentence as before.

Defendant timely appealed.

## DISCUSSION

Defendant contends the trial court prejudicially erred in imposing the upper term. Citing *Wiley*, defendant argues that he never admitted to, nor had a jury found true beyond a reasonable doubt, any of the aggravating factors relied on by the trial court.

5

The People concede that the trial court erred in relying on defendant's lengthy criminal history and his poor performance on probation and parole, and we agree.

Rule 4.421 of the California Rules of Court[4] sets forth circumstances in aggravation that a court may consider in sentencing, including whether a defendant has prior convictions as an adult that are numerous or of increasing seriousness, has served a prior prison term, was on PRCS when the crime was committed, or had "unsatisfactory" prior performance on supervision. (Rule 4.421(b)(2), (b)(3), (b)(4), & (b)(5).)

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b), to generally provide for midterm sentences and prohibit upper-term sentencing unless the factors in aggravation are stipulated to by the defendant, proven to a fact finder beyond a reasonable doubt, or relate to a prior conviction that is established by a certified record of conviction. (§ 1170, subd. (b)(1)-(3).) A trial court violates a defendant's Sixth Amendment right to a jury trial when it "relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*People v. Lynch* (2024) 16 Cal.5th 730, 768 (*Lynch*).) As relevant here, our Supreme Court clarified in *Wiley* that the Sixth Amendment "requires that a jury determine whether the particular details of a defendant's criminal history establish an unsatisfactory probation performance or demonstrate convictions of increasing seriousness, before a trial court can rely on those facts to justify an upper term sentence." (*Wiley, supra*, 17 Cal.5th at p. 1078.)

Here, the trial court imposed the upper term because defendant had "numerous" prior convictions as an adult, had served prior prison terms, had inflicted great bodily injury, and was on supervised release when he committed the current crime. In making these findings on its own accord, the trial court erroneously looked beyond the permitted

---

[4]     Undesignated rule references are to the California Rules of Court.

"bare fact" of defendant's prior convictions and their "elements." (*Wiley, supra*, 17 Cal.5th at p. 1086; see also *Lynch, supra*, 16 Cal.5th at p. 757 ["the facts supporting *every* aggravating circumstance upon which the trial court relies to 'justify' imposition of the upper term must be properly proven as [§ 1170, subd. (b)(2)] requires"].)

Where, as here, a trial court deprives a defendant of a jury trial on aggravating facts used to justify an upper term sentence, we apply the *Chapman* standard of review. (*Wiley, supra*, 17 Cal.5th at p. 1087; *Chapman v. California* (1967) 386 U.S. 18.) Under that standard, a sentence must be reversed " 'unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied . . . , or that those facts were otherwise proved true in compliance with the current statute.' [Citations.] Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*Wiley,* at p. 1087.)

Here, the record fails to support the conclusion that no rational jury would have failed to find true the aggravating circumstances relied upon by the trial court. Although defendant's certified rap sheet showed multiple prior convictions, a rational jury could have disagreed that these convictions were numerous or of increasing seriousness, especially since defendant's criminal history began as a juvenile and was spread out over many years. (*Wiley, supra*, 17 Cal.5th at pp. 1089-1090.)

Similarly, although defendant's criminal history showed that defendant was on mandatory supervision at the time of the current offense and had multiple prior violations of supervision, a rational jury could have concluded that defendant's prior performance on supervision was not unsatisfactory. (*Wiley, supra*, 17 Cal.5th at p. 1091 [even if a defendant committed his current crime while on supervision, where his performance on supervision is "mixed," a rational jury could disagree as to whether a defendant's "*overall performance* on probation was unsatisfactory"].)

7

Therefore, we cannot conclude that the error was harmless beyond a reasonable doubt.  Because we are remanding the matter for full resentencing, we need not reach defendant's additional arguments in his opening brief that the trial court abused its discretion in imposing the upper term and in declining to strike the great bodily injury enhancements.

DISPOSITION

The sentence is vacated, and the matter is remanded to the trial court for a full resentencing.  In all other respects, the judgment is affirmed.

_____\\s\\_____,
Krause, J.

We concur:

_____\\s\\_____,
Hull, Acting P. J.

_____\\s\\_____,
Mesiwala, J.